Lomax, J.
delivered the opinion of the Court.
The three first grounds of error alleged in the petition of the prisoner may be considered together. They are,
1st. The rejection of the two pleas in abatement that were tendered by the prisoner.
2d. The refusal of the Court to quash, upon motion, the indictment, upon grounds, the same that are stated in the pleas in abatement, with an additional ground, that the prisoner had not been duly examined before a Court of examination upon the charge of murder set forth in the indictment.
3d. The refusal of the Court to defer proceedings upon the indictment, in the event of the refusal to quash, till there should be a regular commitment of the prisoner before a justice and a due examination before the proper Court of examination.
The objection urged in this defence upon the motion to quash, because the prisoner had not been duly examined before an examining Court, is at once disposed of by reference to the record of the proceedings of the examining Court, which was submitted to the inspection of the Court, and forms a part of the record in the case. It is stated in the former, that “ Edmund Clorewho stands charged with the murder of Thomas Carpenter was brought to the bar in custody &c. &c.” Now although in the final sentence of the examining Court he is not remanded for trial of the said murder, yet the judgment is sufficiently certain, when it is therein stated that witnesses had been examined and *611 the arguments of counsel heard, upon consideration whereof, that it appeared to the Court that a felony had been committed, and that there was probable cause to charge the accused therewith; and that the said Edmund Clore be remanded for trial &c. The felony can fairly be understood only to have reference to the murder, wherewith it was before stated he had been charged, and upon which charge the examination had been held.
The matters embraced in the pleas, which were the same matters taken as grounds for quashing the indictment, besides that above noticed, were irregularities alleged to have been committed by the justice of the peace before awarding the warrant of commitment. No precedent has been referred to for sustaining either a plea in abatement or a motion to quash, upon the ground of such irregularities in the initiatory proceedings of the justice, which are designed merely to ascertain that there is a degree of suspicion against the accused, requiring that he should be held in custody until a more solemn examination can be had as to the probabilities of the charge, and a trial had of his guilt or innocence. Whatever inconveniences he may complain of as to the examination, or want of examination before the justice, they can have no relevancy as objections to the indictment, which has given the sancof the grand inquest of the county to the charge for which the justice committed him. At that stage of the proceedings, after the finding of the grand jury upon the examinations and proofs before them, charging him with the murder, what defence in reason or in law, can or oughtit to be to the prisoner, that the justice who committed him for the crime with which the grand jury have charged him, did not in his prior examination, examine the case according to legal rules of evidence ? The answer to that question is so decisively pronounced in the case of the Commonwealth v. Murray, 2 Va. Cas. 504, as to *612 render any discussion upon the subject wholly untie- " cessary. In that case upon a motion to quash the indictment, among other grounds, upon objection taken to the warrant oí commitment, the General court pronounced the opinion, “ that even if the warrant of commitment were bad in the particular adverted to, it would be no ground to quash the indictment; because the indictment charges the prisoner with an offence for which he had been previously examined : And whether the original mittimus was legal or not; yet clearly, after he had been remanded to jail by the examining Court, his second commitment was entirely regular.” The principle of that decision is not at all varied, because of any subsequent amendments of the law in chap. 204, Code of 1849, relating to arrest, commitment and bail. It was not error, therefore, in the refusal of the Court below to admit the pleas, or in the refusal to quash the indictment, even supposing the grounds stated for quashing were established by proper proofs, whatever might be in such cases the proper proofs; but in this case no proof at all was offered to sustain the grounds or to defer the proceedings, as was asked for upon the indictment.
The fourth error insisted upon is the setting aside as a juror James M. Twyman.
When, upon the Commonwealth’s challenge, one of the venire is erroneously excluded from the panel of the jury, the effect upon the trial is materially different from that produced by erroneously overruling the prisoner’s challenge to a venireman. In the former case the exelusion of a particular man from the jury does not throw any obstacle in the way of empanneling an impartial jury of qualified jurors. The effect is only to set aside one alleged to be disqualified, and to put in his place one that is qualified. This exclusion and substitution can in no wise affect the fairness and impartiality of the trial; because the trial is still had before a jury all the members of which are free from exception. Not *613 so, in the other case. Then a disqualified juror is imposed upon the accused. He has not been tried by twelve qualified jurors as the law entitled him ; and the disqualification of the juror, thus imposed upon him, vitiates the verdict. Overruling his challenge, therefore, is a just ground of exception on his part; and he is allowed to complain of the error, because he has thereby been aggrieved. He has not been tried as he was entitled to be, by twelve duly qualified jurors. But in the other case, notwithstanding the exclusion complained of of one of the venire, he has had all that any prisoner can be entitled to demand, a fair and impartial trial before twelve jurors, free from all exception. And again if the exclusion of the venireman upon the Commonwealth’s challenge be a matter of exception and a ground of error on the part of the accused, how can the supposed wrong that the error has inflicted upon him be repaired ? It is only upon reversal of the judgment to award a new venire facias; not that he may have the excluded venireman empanneled on his jury, but that he may again be tried by twelve qualified jurors; in other words that he may have another trial, such precisely in all respects, as that fair and impartial trial before a jury free from exception, that he has already had. Even if we could suppose that the law entitles him in any sense to an election of his jurors out of the panel of the venire, so that the Judge ought not arbitrarily to deprive him of it, yet if he has enjoyed the benefit of the great object of all trials, his wrong can at most amount only to damnum absque injuria. We are strongly disposed to think that the exclusion of a venireman upon the Commonwealth’s challenge, as stated in this record, ought not to have been allowed as a matter of exception, or to be entertained as error. Henry’s Case, 4 Humphr. R. 270, (Tennessee,) and Arthur’s Case, 2 Dev. R. 217, (N. Carolina,) are strong to support these views of the Court. The remarks made by Hen *614 derson, Ch. J. in the latter of these cases are exceedingly ~ .. , forcible.
But was there any error in excluding Twyman from the jury ? This venireman, “ being called and sworn, stated that he had not heard any of the evidence, nor any report of it; but from what he had heard spoken of in the case in the neighbourhood, he had formed an opinion to a certain extent.” Thereupon “ the Court asked him if there was partiality or prejudice on his mind for or against the prisoner? He replied that he could not say there was any, but if any, it was in favour of the prisoner.” Now, as to the opinion stated upon this examination, this Court upon the principles herein afterwards stated, does not think that such opinion as it is presented in the bill of exceptions, could furnish a ground for the Commonwealth’s challenge. But the interrogatory, propounded by the Court, seems to be upon a matter distinct from the formation of a preconceived opinion; it is in regard to his feelings. It might be a question deserving grave consideration whether any degree of favour towards the accused, however doubtfully felt or expressed, ought not to exclude the juror upon the Commonwealth’s challenge from sitting upon the jury; because if it should not, the correlative challenge on the part of the prisoner, because of a prejudice similarly felt, might be forestalled in all cases hereafter, and precluded by our decision. That point is therefore waived, to consider another ground of challenge for cause on the part of the Commonwealth. Upon further interrogation by the Commonwealth’s attorney, Twyman “stated that he had conscientious scruples about the propriety of capital punishment, and Avas opposed to it. He was then asked by the Commonwealth’s attorney whether if the testimony in the cause proved the prisoner to be guilty of murder in the first degree, he would convict him of it; he replied that he did not know. He was thereupon challenged for *615 cause by the Commonwealth, and the challenge sustained. No case has been found in the English books, deciding the question upon this last mentioned matter of conscientious scruples, as a cause of challenge for the crown. It is not often that the crown, according to the English practice under their statutes, is put to the necessity of shewing cause of challenge. The postponement of the cause of challenge and setting aside the jurors excepted to by the crown, until the panel is entirely gone through without obtaining a qualified jury from the rest of the venire, operates generally, perhaps in all cases, as a sort of peremptory challenge by the crown, though it be restricted to challenge for cause only. In New Hampshire in a case of misdemeanor, Pierce v. State, 13 New Hamp. R. 555-6, and in Pennsylvania, in a case of murder, Commonweath v. Lisher, 17 Serg. & Rawle 155; such cause of challenge, independent of statute, has been allowed. A recent provision in a statute in Virginia, Code of 1849, ch. 208, § 8, declares that “ any person whose opinions are such as to prevent his convicting any one of an of-fence punishable with death, shall not be allowed to serve as a juror on atrial for such offence.” Now what is a conscientious scruple, as spoken of by the venireman, but an opinion, and more than an opinion. For it is not merely a speculation established in the mind, but it has pierced into the conscience and fastened itself there, as a scruple to regulate his life and actions, and stirring opposition to the propriety of capital punishments which had been enacted by law. And so deeply rooted was this conscientious scruple opposed to a legal punishment, that he did not know whether even the sacredness of the oath to decide in his verdict according to the evidence, could overcome this conscientious scruple. Was this opinion or scruple of such influence as to “ prevent” him from “ convicting the prisoner ?” The Court could not know; and the juror him *616 self, according to his examination, did not know that the evidence proving murder in the first degree, or his loyalty, or the obligations of the oath to find according to evidence, would control or overcome the influence of his conscientious scruples. Such being the state of the juror’s mind, it was most proper to regard him as excluded by the spirit and even by the terms of the provision of the act referred to, from serving as a juror.
The 5th error assigned is the refusal of the Court to set aside as a juror Henry Huffman.
We are again brought to the consideration of the question of the disqualification of veniremen to be sworn as jurors, in consequence of their preconceived impressions or opinions, in regard to the crime or to the accused to be tried. To secure, as far as possible, the impartiality of, jurors, such only should be empanneled as will strictly decide, according to the proofs offered at the trial, and according to them alone. Whatever considerations may have recommended juries of the vicinage, it is, if it were practicable, desirable that the men constituting the jury should never, previously to the trial, have heard of the offence or the offender.
When the venireman is called before the Court and offered as a juror it seems to be a fair presumption that he has intelligence to know his duty and integrity to perform it; and that he is under no influences impelling him to do wrong. That presumption is not less fair and reasonable though it should be deemed proper to test the state of his mind and of his feelings in regard to the matter to be tried through the more searching detection of an examination upon oath. If there be no extraneous proofs offered as in this case, we are bound, according to every principle of justice and of law, to credit the disclosures which he makes, as to his own belief of the state of his mind, which can only be known to himself; and not to disbelieve an unimpeached witness, made a witness, not by his own act but by the act of *617 the Court, and who is subjected to those sanctions of truth, the most solemn that can be applied to the consciences of men. Where no positive inconsistencies appear in his examination, suspicion should not be indulged in unnecessarily creating them. At the same time, that there should be no overstrained efforts to overlook inconsistencies, the whole of the examination should receive a candid and a reasonable construction. If there be no irreconcilable inconsistencies discovered, then there is a concurrence of presumption and of testimony which should overrule and silence every objection to the qualification of the juror.
When therefore the juror states, as he does in this case, “ that he had no prejudice nor partiality for or against the prisoner; and he believed he could give the prisoner a fair and impartial trial according to the evidence that should be given in,” we are bound so far to regard that to be true, which he has so stated. The credit paid to that statement must be conclusive, unless repelled by other parts of the examination, that may conflict with and disprove it. Is there any such conflicting disclosure made by the juror ?
Hu states “ that he had formed an opinion.” It is not expressly stated the extent of that opinion : whether it was an opinion extending to the whole case, in all its facts and circumstances as it would be expected to be submitted to the jury upon the trial, or extending only to some part of the case: nor does he expressly describe the nature of that opinion, in the power and influence that it would be likely to have over his judgment, as being a decided or substantial opinion: nor does he state that its power and influence, whatever they might be, had derived any adventitious strength from the circumstance, that the opinion had been expressed to others. There are infinite shades of opinion between that degree in which it is an impression too slight to restrain the free exercise of the judgment *618 when called to a graver consideration of the case; and that degree amounting to a deep settled conviction. When it is stated merely that an opinion has been formed, in which of these classes would a fair presumption place that opinion, in its operations and its influence upon the judgment of a man who swears, notwithstanding the formation of that opinion, “ he believes he can give the prisoner a fair and impartial trial, according to the evidence that should be given in?” If it was of the latter kind, the juror must have been perjured in the statement which he makes of his impartiality, or infatuated into an unnatural dullness, in the statement which he makes of his belief. It would seem therefore a reasonable presumption, to place the opinion alluded to in the former class, and thereby give consistency to this sworn examination in all its parts: and moreover as the juror felt conscious that, notwithstanding the opinion, he retained the power to give an impartial trial to the case made out according to the evidence that should be given in, it would be fair to presume that the opinion was limited in its extent; or was based, not upon the facts and circumstances which the trial would develope, but upon facts and circumstances he had heard that might be materially different. So that the opinion could not be regarded as one formed of the true case, which he may not yet have heard; and as to which therefore his judgment had not as yet been compromised.
In the anxiety of the Courts to select impartial and upright jurors, a test has been applied to ascertain the extent and nature of the preconceived opinion, by ascertaining what had been the sources of the information which had given birth to the opinion : Not that a decided or substantial opinion, when stated to be decided and substantial, would be reduced to any thing less, in the consideration of the Court, according to the means of information. Such an opinion, howsoever *619 formed, with or without any information, will always be a disqualification of a juror. But that state of opinion is not to be presumed, where such is not stated to be the case; for such a prejudication of the criminality of a fellow being is not consistent with ordinary humanity, and is regarded as offensive to the law. But where the nature and influence and extent of the opinion are undisclosed, the test alluded to, may very properly be referred to. If the opinion of the juror was formed upon hearing the evidence upon some former occasion, it would be in vain to believe otherwise than that it was a decided and substantial opinion. He had had the facts and circumstances of the case, the credibility of the testimony and every thing materially tending to produce a fixed judgment in the case, all of them, under consideration, and the decision in which they resulted in his own mind would not be likely to be changed upon a repetition of the same proofs at the trial upon which he was to be placed; nor should the preconceived opinion be otherwise regarded, when it was formed upon conversations with the prosecutor or the witnesses, or upon reports communicated to him of what had been testified or would be testified, and a full credence had been given to the statements, through whatever channel so made to him. In making these enquiries into the state of the juror’s mind, the degree of credence which he reposed in the persons from whom, or through whom, he has derived the information leading to his decision, is also a consideration which must always be entitled to much weight. But in the present case the juror swears “ that he had not heard any of the evidence; nor had he heard any report of it from those who had heard it; nor does he say that he had placed any credence in the truth of what he had heard. But the juror may have received impressions upon his mind by means much less authentic than those that have been just alluded to. He may not have been informed or *620 made up his opinion upon the whole case, but upon a statement of what might be entitled to be regarded by him as a material part of it. He may be ignorant of other parts not yet disclosed to him. His mind may not have been exercised, or may not have had the opportunity of being exercised, either as to the case in full, or the credibility of those whence his information may have been derived. There is in every bosom an irrepressible casuistry, ever ready to exercise the judgment upon every representation of criminality; more especially in crimes of a deep atrocity, such as homicide, which seems instinctively to rouse all the faculties of the mind and the sensitiveness of the soul. Upon such occasions the minds and the feelings of none are more apt to be roused into the formation of opinions upon what they may have heard that is material in the case, than those who are the most intelligent, and discreet and upright, and, at the same time, the most discriminating ; such as are of all the community, the most fit to sit in trial upon the criminal. They may upon the intelligence which they have received, have formed opinions on the case, and even strong ones, but they were formed upon the hypothesis of the case as it was presented to them. If they are disqualified as jurors then those best qualified will be excluded from passing between the Commonwealth and the prisoner in cases where vindication of guilt or innocence will be most vital. Courts should be careful in laying down rules as to the qualification of jurors, which will throw jury trials and the administration of criminal justice,'into the hands of the most senseless and ignorant and least competent to pronounce a just and legal verdict. A hypothetical opinion, though it may be a strong one, and upon whatever information formed, unless it be such as overpowers the mind with conviction, has never been considered as a disqualification. 1 say, unless it overpowers the mind with conviction, because there may *621 be cases, as where the opinion has been formed upon . listening to the evidence in the case upon another occasion; and there it would be vain to treat it as hypothetical. But when it is ascertained, either by the express declaration of the juror or by palpable implication from his examination, that the opinion is only hypothetical upon the truth of the matters which he has heard (less authentic than such as has just been referred to,) then the juror is to be deemed not unfitted for the rendering a fair and impartial verdict. When the juror swears himself free from prejudice or partiality, and that he can give the prisoner a fair and impartial trial, is it an unreasonable presumption that the opinion he has formed, to whatever extent or in whatever degree, is no more than a hypothetical opinion ?
We would not at all events be warranted in presnming more in this case, when it is stated in the examination of the juror “but from the rumour of the neighbours, he had formed an opinion.” In Armistead's Case, 11 Leigh 657, it was held that “ generally opinions founded on hearsay or common reports in the country ought to be regarded as hypothetical, or so slight as net to disqualify the person entertaining them; unless upon further examination, it should appear that this was not the true state of the juror’s mind; but that he had been so inconsiderate and unjust, as upon insufficient evidence or no evidence at all, to have prejudged the prisoner’s cause: and then he is doubly unfit to be trusted with it! This principle was afterwards unanimously acted upon by this Court in the case of McCune & others, 2 Rob. R. 771.
Nor can we find anything in the further examination of the juror to shew that the above was not the true state of the juror’s mind. The presumption that the opinion, founded on hearsay or common report of the neighbourhood, was merely a hypothetical opinion, is not repelled by the disclosure that the opinion was still exist *622 ing upon his mind. An opinion “ regarded as hypothet- . , ica^ or slight,” does not become less so because it may be existing in the mind for six or seven months, or a year, or for any period. The continued existence of impressions upon the mind which do not in themselves amount to disqualification, cannot become such by reason of their continuance on the mind.
Nor is it repelled, because the juror in speaking of the opinion so formed, and such, as it was so far upon the matters above noticed to be considered, said, “ which he should stick to, unless the evidence should turn out to be different from what rumour had reported it to be.” The mind that has formed an opinion, though hypothetical or slight, cannot be expected to relinquish that opinion, if upon a revision of the case, with better lights to guide the judgment, the facts and circumstances should exactly or materially correspond with those which made the first impression. The judgment is not on that account less impartial or more prejudiced, because the same opinion recurs when the same elements are presented for the formation of an opinion at the trial, as had given birth to the first opinion. The hypothesis or slight impression resting on the mind may have rested there without any prejudice or partiality, without any prejudication of the weight and credibility of the testimony or the inferences to be deduced from the facts and circumstances in all their combination and the variety of views of which they might be susceptible in the proceedings at the trial. Several cases have occurred where the jurors, entertaining hypothetical opinions, have stated that, if the evidence should correspond with what they had previously heard, their opinions would remain: Nevertheless they have not been held to be thereby disqualified on the ground that they would adhere or stick to their former opinion. But it is supposed that a stronger obstinacy of opinion is expressed when the juror says in this case that he will stick to *623 his previous opinion, unless the evidence should turn out to be different from what it had been reported to be. But still the remark even in this shape, must be reasonably understood to imply that the juror’s mind was not made up. For in the form in which the declaration of the juror is stated, it is fair to imp] y that if, e contra, the evidence should be different, he would adopt an opinion conformable with the testimony. We are however saved the necessity of considering critically the similar import of the two forms of expression. For in the case of McCune Sf others and also in Moran’s Case, the statements made by the jurors as to their preconceived opinions, was in a form of expression the same, or similar to that in the examination of the juror in that respect in the present case. It is therefore considered that there was no error in admitting this juror.
The 6th error assigned in the petition is the overruling the application to set aside the verdict rendered by the jury.
On what ground this application was made, the bill of exceptions does not state, nor was any particular ground stated in the argument of the counsel in error. Indeed none, as all the facts appear in the bill of exceptions, can justly be stated as a ground for such application. The jury have found the homicide to be murder in the first degree, and the Court ought not but upon the strongest objections to disturb their finding. Every fact stated by the Judge sustains the propriety of that finding; the previous grudge; the previous threatenings; the express malice ; the deliberation and premeditation with which the deadly means of killing were provided by the prisoner; his coming with these deadly means to the house of the deceased, and his insults offered to him at his own door, as if to exasperate the deceased to an attack upon him, to justify or mitigate the killing upon which he had deliberated and premeditated ; these all shew a murder which upon the finding of *624 this jury this Court would have no warrant for pronouncing to be less than murder in the first degree ; no, not even if the acts of the deceased as shewn in this case, under that resentment which was provoked by the prisoner, could be regarded as an assault upon the prisoner. Upon the whole record the Court can discover no error whatever committed by the Court below; and the Judges are unanimous in refusing the writ of error.